```
42ITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

BEATRIZ SANTOS MARRERO,

                              Plaintiff,     **14-cv-06142**
                                              **DECISION AND ORDER**
      -vs-

CAROLYN W. COLVIN,
Commissioner of Social Security,

                              Defendant.
_____

Plaintiff Beatriz Santos Marrero ("plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "SSA"), seeking review of the final decision of the Commissioner of Social Security ("defendant" or "the Commissioner") denying her application for supplemental security income("SSI") on behalf of her 12-year-old son ("JOCS").

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, plaintiff's motion is denied and defendant's motion is granted.

## PROCEDURAL HISTORY

On August 13, 2010, plaintiff filed an application for SSI benefits on behalf of JOCS alleging disability since July 26, 2010. Administrative Transcript ("T.") 233-244. Following a denial of that application, a hearing was held at plaintiff's request on

October 16, 2012 before administrative law judge ("ALJ") Stanley K. Chin, and testimony was given by plaintiff and her son. T. 13-28.

The ALJ, in his review of the evidence, applied the required three-step analysis set forth in the Social Security Administration's SSI regulations (see 20 C.F.R. § 416.924[a]) and made the following findings: (1) JOCS was a school-aged child on July 31, 2002; (2) he had not engaged in substantial gainful activity since July 26, 2010, the SSI application date; (3) his speech language disorder, pervasive developmental disorder, attention deficit hyperactivity disorder ("ADHD"), selective mutism, learning disability, adjustment disorder, and anxiety disorder were severe impairments;(4) his impairments did not meet or medically equal the severity of any impairments listed in 20 CFR Part 404, Subpart P, Appendix 1; (5) his impairments did not functionally equal the severity of the listings (20 CFR 416.924[d] and 416.926[a]); and (6) JOCS had not been disabled as defined by the Act since July 26, 2010. T. 48-57.

With respect to finding number four, the ALJ considered Listings 112.02, 112.04, 112.06, 112.10, and 112.11, but found that none of the criteria was met. T. 24.  In finding number five, the ALJ, after considering the objective medical opinion evidence, the testimony, teacher reports, claimant's statements, and the opinions of family and friends, found that, as result of his impairments, JOCS had (1) a marked limitation in acquiring and using

information, (2) a less than marked limitation in attending and completing tasks, (3) a less than marked limitation in interacting and relating with others, (4) no limitation in moving about and manipulating objects, (5) no limitation in the ability to care for himself, and (6) no limitation in health and physical well-being. T. 48-57.

The Appeals Council denied plaintiff's request for review of the ALJ's decision. T. 1.  This action ensued.

## DISCUSSION

**I.   General Legal Principles**

42 U.S.C. § 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007).  This section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir.1999), *quoting Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir.1983) (per curiam).  Section 405(g) limits the

3

scope of the Court's review to two inquiries: whether the Commissioner's findings were supported by substantial evidence in the record as a whole and whether the Commissioner's conclusions are based upon an erroneous legal standard. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir.2003).

**II.  Educational and Medical Evidence**

A January 2009 clinical psychologist report reveals that JOCS had received special education services in Puerto Rico since 2005. T. 455.  He was referred by his teacher, Ms. Perez, to whom he presented with severe speech and language problems, visual-motor coordination problems, and poor attention span with "lots of individual help and support" needs. T. 455.  He was diagnosed with pervasive disorder NOS, with sub findings of speech-language disorder, perceptual-motor immaturity, ADHD, sensory problems, and below-average intelligence ("with great development potential"), hypoglycemia and visual problems, and academic problems. T. 455. The continuation of special education and more individualized help was recommended. T. 455.

In a functional report completed in August 2010, plaintiff reported that JOCS had vision and speech problems. T. 247-249. He could be understood some of the time and deliver telephone messages, repeat stories, uses sentences with "because," "what if," and "should have been,"  and talk with family and friends. T. 250. JOCS's learning progress was limited to reading  capital letters

4

and simple words and printing his name and some letters. T. 251. Although JOCS did not make new friends or play team sports, he had friends of his own age and he generally got along with adults. T. 253. With respect to his ability to care for himself, JOCS did not tie shoelaces, choose his clothes, pick up and put away his toys or clothes, obey requests or safety rules, or accept criticism. T. 254. He was able to keep busy on his own, but not complete homework or chores, finish tasks, or work on art projects. T. 255.

In September 2010, Dr. Harbinder Toor performed a consultative pediatric examination of JOCS and found no abnormalities apart from a speech impairment and JOCS's history of learning and speech difficulty, ADHD, and asthma. T. 407-408. Dr. Toor noted that JOCS enjoyed, among other things, playing with his siblings and doing homework. T. 406. JOCS appeared to have a normal attention span, and he related to the doctor in an age-appropriate way. T. 406. In a November 2010 childhood disability evaluation, consultative state examiner Dr. Weir, a speech language pathologist, found that JOCS had a marked limitation in the domain of acquiring and using information, a less than marked limitation in the domain of interacting and relating to others, and no limitation in the domains of attending and completing tasks, moving about and manipulating objects, caring for self, and health and physical well-being. T. 409-413.

In a first-quarter second grade report card from Ivan Green primary school for the 2010-2011 school year, it was noted that JOCS failed to meet grade-level standards in nine sub-areas of reading, writing, and math, but met standards in nine other sub areas with moderate to minimal assistance and redirecting. T. 328-330. His "academic and social behaviors [were] excellent." T. 331. His teacher, Ms. Kamb-Shepard further commented that JOCS: was cooperative and respectful; followed follow directions; got along with his peers; was eager to learn; and asked questions or checked to see what other were doing if he did not understand the directions. T. 331.  By the second quarter, his teacher noted that although JOCS was working below grade level, he continued to learn new information quickly and was able to speak up in the classroom, his mathematic achievement improved and he continued to have good academic and social behaviors, despite being off-topic and having trouble focusing on  difficult lessons at times. T. 336-338. JOCS's English language skills also improved with an increase of sight words, vocabulary, and simple sentence writing. T. 346-347.

In her teacher report dated October 18, 2010, Ms. Kamb-Shepard noted that, since moving from Puerto Rico and starting school in September, JOCS had quickly learned new concepts and vocabulary, including the ability to track and read predictable print and familiar books, despite being unable to identify any English sight

6

words when he started school. T. 452. She further noted that although he seemed to stare off at times, he was "mostly" focused and did not socialize much in the classroom. T. 453. In a teacher questionnaire dated October 12, 2010, Ms. Kamb-Shepard noted that JOCS's dominate language was Spanish. T. 272. Out of ten activities related to acquiring and using information, JOCS had: an obvious problem reading and comprehending written material, providing adequate oral explanations and adequate descriptions, and expressing ideas in written form; a slight problem comprehending oral instructions, understanding school and content vocabulary, and comprehending and doing math problems; and no problem understanding and participating in class discussions, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions. T. 273. Ms. Kamb-Shepard further noted that JOCS was picking up the English language quickly, but still appeared to have some issues understanding oral instructions and reading and writing in English. T. 273. She revealed that JOCS had no problems in the domain of attending and completing tasks, stating: "[t]he only difficulty that occurs in this area is due to Spanish/english language." T. 274. Ms. Kamb-Shepard found no problems in the domains of interacting and relating with others, moving about and manipulating objects, and caring for himself. T. 275-277.

In a November 2010 progress report for IEP goals, Ms. Kamb-Shepard noted that JOCS was progressing satisfactorily toward all but one goal. T. 333-334. At a December 2010 IEP meeting, it was noted that: JOCS's speech milestones were delayed; his visual motor score fell in the 95th percentile; occupational therapy was not recommended; he was learning English quickly, but ESOL services should continue; he was able to independently learn new concepts; and he needed more time in a regular education setting. T. 351-352. By June 2011, he had achieved most of his IEP goals, apart from solving single digit addition and subtraction problems. T. 355-357.

A speech-language-hearing evaluation, conducted over three sessions in February and March 2012 by Ellie Shulman, a bilingual speech-language pathologist, revealed that JOCS's overall receptive language skills, auditory processing skills, and expressive language skills were severely delayed. T. 315-317. The Clinical Evaluation of Language Fundamentals-4 ("CELF-4") results placed JOCS in the first percentile or less for core, receptive, and expressive language skills, with a score of 55 for core language. Ms. Shulman advised, however, that the test score should be "interpreted with caution, as the CELF-4 was normed on Hispanic students and part of this evaluation were administered in English." T. 315. She noted that JOCS "exhibits a range of abilities, suggesting more potential than indicated by a single subtest score." T. 315. JOCS "appeared to be a visual, tactile,

kinesthetic learner," and verbal information needed to be "repeated, paraphrased, and broken down into short, sequential steps." T. 317.  Ms. Shulman found that JOCS exhibited normal hearing, articulation, voice, and fluency skills with mildly delayed pragmatic language skills and several areas in need of improvement, including vocabulary, following multi-step directions, short-term auditory memory, auditory comprehension, syntax and morphology, verbal reasoning and phonological awareness. T. 317. Although JOCS was proficient in neither English or Spanish, he was emerging as English dominant, and he exhibited a true language disorder, not weaknesses due to second language interference. T. 317.

In her school performance questionnaire dated March 26, 2012, special education teacher Lori May opined that JOCS had an extreme impairment in learning new material, reading and comprehending written material, effectively communicating learned material, expressing ideas and using problem solving skills, becoming distracted, conversing, in his expressive language skills. T. 363-365.  He had a moderate impairment in comprehension and following directions, receptive language skills, recalling and applying learned material, needing redirection and supervision, carrying out instructions, making and keeping friends, and relating stories. T. 363-365.  He had a mild impairment in maintaining in age-appropriate pace and completing tasks, expressing basic wants and

needs. T. 364-365. He had no problem with overactivity and restlessness, implusivity, frustration, getting along and taking turns with other children, class rules, fine and gross motor skills, coordination, injurious behavior, safety rules, and hygiene or self care. T. 363-366. Ms. May, as a familiar listener, could understand most of JOCS's speech if the topic was known, no more than half if the topic was unknown, and most or all of his speech with repetition regardless of the topic. T. 365.

A multidisciplinary evaluation, dated May 11, 2012, by Erin Bezek reveals that JOCS, a nine-year-old third grader at the time, received special education in an integrated classroom with speech and language therapy in Spanish twice per six-day cycle, counseling once per cycle, and English language learner ("ELL") services every other day for 45 minutes. T. 307. Ms. Bezek noted that JOCS was previously diagnosed with ADHD, selective mutism, and pervasive developmental disorder not otherwise specified, and a history of hypoglycemia. T. 307. JOCS was born in Puerto Rico, where he attended Head Start at three and four years old, kindergarten at five years old, and first grade in regular education. T. 308. Ms. Bezek noted that, in 2010, JOCS moved to Rochester with his family and received special education services as a second grader in the East Irondequoit School District and as third grader in West Irondequoit. T. 308. Ms. Bezek evaluated JOCS's current cognitive functioning using the Comprehensive Test of Nonverbal

Intelligence("CTONI"), which is used to evaluate non-English speaking individuals with language disorders, among others. T. 309. JOCS's performance on the pictorial scale subtests was in the average range, and his performance on the geometric scale was below average. T. 310. Ms. Bezek concluded that the results of the cognitive assessment revealed poor to average abilities, stating that JOCS "performed well on the task that required him to use categorical reasoning in order to deduce the relationship between two stimulus figures in pictorial[, but] he struggled with the task that required him to problem solve a progression format using pictures." T. 311. She found, therefore, that "his analogical and categorical reasoning abilit[ies] were better developed with pictures than unfamiliar designs," apart from his sequential reasoning, where he "performed better with the unfamiliar designs." T. 311.

A May 2012 assessment of JOCS's academic achievement in nine areas revealed his elevated inattention, learning problems, executive functioning difficulties, and problems with peer relations at home and in school. T. 321-327. The 2011-2012 report card for grade three revealed that, by the fourth-quarter, JOCS was meeting standards in 21 academic areas and approaching standards and nearing stated goals in the remaining 23 areas, apart from when he exceeded standards in four areas of physical education and learner characteristics. T. 380-381.   An IEP summary sheet

for the 2012-2013 school year reveals that JOCS, a strong visual learner, made improvements across all areas, but he was performing below grade level and benefitted from a structured classroom with clear expectations and adults to support him throughout his day. T. 305-306.

### III. Non-medical or educational evidence

At the hearing, plaintiff testified that JOCS, a ten-years-old fourth grader, started special education after first grade and had ADHD, a speech impediment, and maturity issues, and he received speech therapy in school. T. 16.  Plaintiff testified that she was on the waiting list for JOCS to receive mental health treatment through the Easter Seals. T. 17.  Plaintiff observed that JOCS had trouble concentrating and that he will insist on having something even after she told that he cannot have it. T. 17-18.  He has difficulty completing homework, understanding some school material, and following directions at times. T. 18-19.  JOCS got along well with his siblings, but he was reserved and timid around others. T. 20.  He read on his own, slept well, continued to have speech difficulties, and took no medication. T. 20-21.  Plaintiff felt that JOCS suffered from anxiety, becoming, for example, excessively upset when he lost at a game. T. 22.  JOCS had difficulty choosing his clothes and tying his shoe laces, but he would do assigned household chores. T. 22-23. JOCS testified that he enjoyed school, doing homework, playing Super Mario Galaxy, and going on field

trips. T. 24, 26-27. He had friends at school and outside of school. T. 25-26.

**IV. The Commissioner's Decision Denying Plaintiff Benefits is Supported by Substantial Evidence.**

Plaintiff contends that the ALJ's findings that JOCS had a marked limitation in the functional domain of acquiring and using information and less than marked limitation in the domains of interacting and relating to others and attending and completing tasks are not supported by substantial evidence. Plaintiff's memorandum of law, p. 17-29. Defendant responds that these findings are supported by substantial evidence. Defendant's memorandum of law, p. 15-22.

Under the SSA, an individual under the age of 18 is entitled to SSI benefits when she has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and which have lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3)(C)(i). The regulations set forth a three-step sequential process for the ALJ to follow when evaluating SSI claims for minor children. See 20 C.F.R. § 416.924. The burden of proof rests on the claimant at each step. *See Jonson v. Colvin*, 2013 WL 1314781, at *2 (W.D.Pa.2013).

A finding of disability is warranted if a "marked" limitation is found in any two of the six domains, or an "extreme" limitation

in a single domain listed in 20 C.F.R. § 416.926a: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1)(i)-(vi); *Ramos v. Barnhart*, 2003 WL 21032012, at *8 (S.D.N.Y.2003). A "marked" limitation exists when the impairment "interferes seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i) (internal quotation marks omitted).

> "[A]n extreme limitation . . . interferes very seriously with [the] ability to independently initiate, sustain, or complete activities . . . Extreme limitation is the rating [given] to the worst limitations. However, [it] does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning [one] would expect to find on standardized testing with scores that are at least three standard deviations below the mean."

20 C.F.R. § 416.926a(e)(3)(i). Although test scores will be considered, "[n]o single piece of information taken in isolation can establish whether [the claimant has] a 'marked' or an 'extreme' limitation in a domain." 20 C.F.R. § 416.926a(e)(4)(i). Test scores are to be considered "together with the other information [concerning] functioning, including reports of classroom performance and the observations of school personnel and others." 20 C.F.R. § 416.926a(e)(4)(i) and (ii).

Here, the ALJ's finding that JOCS has a marked limitation in the domain of acquiring and using information is supported by substantial evidence in the record. Plaintiff maintains that the ALJ's finding that JOCS exhibited a "marked limitation" in acquiring and using information was an error because JOCS's core language score on the CELF-4 was 55, which is, "three standard deviations from the mean," and therefore "meets the definition of an extreme limitation." Plaintiff's memorandum of law, p. 18.  In his decision, however, the ALJ specifically responds to plaintiff's argument for an extreme limitation in this domain and finds that it "is not persuasive," finding that although the record reveals JOCS's special education program and his below-grade-level academic performance, his

> "present school records also note that in his more restrictive environment, he is starting to make improvements in many of his classes.  He receives services including individualized attention, pre-teaching, and re-teachings.  Ms. Shepard opined up to less than marked limitations in this domain.  The State agency speech consultant opined a marked limitation in this domain. Based on all of the evidence of the record, including the fact that the claimant has not actually repeated any grades during the relevant period, I find no more than a marked limitation in the first domain."

T. 51.

It is clear that the ALJ properly considered this issue, and there is substantial evidence in the record to support his conclusion that JOCS has no more than a marked limitation in the domain of acquiring and using information.  The CELF-4 score alone

15

does not give rise to the level of extreme, particularly in light of the examiner's warning. Moreover, contrary to plaintiff's contention, there is no indication in the record that the ALJ relied solely on JOCS's IQ score in making this finding, nor that the ALJ ignored the teachers' evaluations, JOCS's other test scores, and the restrictive nature of his educational placement. Plaintiff's memorandum of law, p. 18-24. "While the ALJ must clearly set forth the essential considerations with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence, he need not explicitly reconcile every conflicting shred of medical testimony." *Pena v. Chater*, 968 F. Supp. 930, 938 (S.D.N.Y.1997), *aff'd Pena v. Apfel*, 141 F.3d 1152 (2d Cir.1998). By and large, the record evidence reveals that JOCS has a marked limitation in the domain of acquiring and using information, but not to the extent that his limitation "very seriously" interferes with his ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). JOCS's school progress reports, report cards, teacher evaluations and reports, IEP reports all establish a pattern of academic and social improvement throughout the school year. The ALJ's determination is further supported by, among others in the record, Dr. Weir's consultative examination results, JOCS's second grade report card, Ms. Kamb-Shepard's reports and observations, the evaluations of Ms. Shulman and Ms. Bezek, and

JOCS's IEP progress reports. T. 273, 310-311, 315-317, 331, 336-338, 346-347, 351-352, 409-413, 452, 453, 380-381.

Accordingly, the Court finds no error in the ALJ's decision with the respect to the domain of acquiring and using information. The Court has considered plaintiff's remaining contentions that the ALJ's determination that JOCS had less than marked limitations in the domains of interacting and relating to others and attending and completing tasks is not based on substantial evidence, and finds them to be without merit.

With respect to interacting and relating with others, the ALJ noted in his decision that although the record reveals that JOCS is shy around non-family members, has difficulty being understood at times, and is defiant to his mother occasionally, the evidence shows that JOCS plays with and gets along well with his siblings and peers, has friends at school, converses with his family members, friends and teachers, repeats stories, speaks up in the classroom, and is cooperative and pleasant. There is an abundance of record evidence, including the testimony of JOCS and plaintiff as described above, that clearly supports the ALJ's finding that JOCS, despite his speech-language delays, had a less than mark limitation in the domain of interacting and relating with others. Likewise, the Court reject's plaintiff's contention that the ALJ's finding that JOCS had a less than marked limitation in attending and completing task. This finding is supported by substantial

evidence in the record that includes, but is not limited to, the majority of JOCS's school records, his evaluation results, his IEP progress reports and notes, plaintiff's testimony, and the opinion of Ms. Kamb-Shepard and Dr. Weir that JOCS had no problems in this domain.

Based on the foregoing, this Court finds that the record as a whole establishes that the ALJ's decision is supported by substantial evidence.

## CONCLUSION

Accordingly, the defendant's cross-motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied. The complaint is dismissed in its entirety with prejudice. The ALJ's decision denying plaintiff's claim for SSI is supported by the substantial evidence in the record.

ALL OF THE ABOVE IS SO ORDERED.

    S/ MICHAEL A. TELESCA
HONORABLE MICHAEL A. TELESCA
UNITED STATES DISTRICT JUDGE

DATED: Rochester, New York
       September 29, 2015